UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATHANAEL RUTLEDGE,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>ADP, INC.,<br><br>　　　　　　　　　　Defendant. | Case No.: 22-cv-898-L-BLM<br><br>**ORDER DENYING PLAINTIFF'S COMBINED SPECIAL MOTION TO STRIKE, REQUEST FOR ATTORNEYS' FEES AND COSTS, AND MOTION TO DISMISS**<br><br>**[ECF No. 23]** |

Pending before the Court is Plaintiff Nathanael Rutledge's ("Rutledge") combined special motion to strike, request for attorneys' fees and costs, and motion to dismiss Defendant ADP, Inc.'s ("ADP") counterclaims. (ECF No. 23.) ADP opposed, (ECF No. 28), and Rutledge replied, (ECF No. 29). The Court has jurisdiction over the present matter pursuant to 28 U.S.C. § 1332 and decides the matter on the papers submitted without oral argument. *See* Civ. L. R. 7.1(d.1). For the reasons stated below, the motion to strike is denied, the request for attorneys' fees and costs is denied, and the motion to dismiss is granted in part and denied in part.

I. **BACKGROUND**

According to ADP's counter-complaint, Rutledge began working for ADP in 2019. (ECF No. 21, at 21.) In or about August 2021, Rutledge engaged in alarming actions and made troubling statements towards ADP employees which prompted an investigation. (*Id.* at 22.) ADP's Director of Associate Relations Sonya Everett ("Everett"), and ADP's Lead Investigative Security Agent Michael Paulhus ("Paulhus"), arranged a Zoom videoconference call with Rutledge to take place on August 23, 2021, as part of the investigation. (*Id.*)

1   Rutledge "attended" the Zoom videoconference call with Everett and Paulhus but
2   did not appear on video despite Paulhus's requests.  (*Id.*)  Rutledge also refused multiple
3   times to respond to Paulhus and Everett's questions.  (*Id.*)  Paulhus and Everett placed
4   Rutledge on an Employee Assistance Program ("EAP") as a result of this meeting.  (*Id.*)

5   Rutledge was required to engage with ADP's EAP provider, Joanne Hird ("Hird")
6   as part of the EAP. (*Id.* at 23.)  Rutledge met with Hird on August 24, 2023.  (*Id.*)  ADP
7   received a statement of non-compliance two days later which showed that Rutledge refused
8   to follow Hird's treating-provider recommendation of additional assessment and therapy.
9   (*Id.* at 23–24.)  After further refusing to attend another videoconference call with Everett,
10  Rutledge was terminated effective August 31, 2023.  (*Id.* at 24.)

11  ADP alleges, on information and belief, that Rutledge surreptitiously audio-recorded
12  both the August 23 meeting with Everett and Paulhus and the August 24 meeting with Hird.
13  (*Id.* at 22–23.)  At no point during either conversation did Rutledge notify the other meeting
14  participants that he was recording the conversation, nor did Rutledge receive consent to do
15  so.  (*Id.*)  ADP states that Rutledge used his cell phone or another form of personal
16  equipment to audio-record the August 23 Zoom call.  (*Id.* at 23.)

17  Rutledge's operative amended complaint asserts claims for disability discrimination,
18  disability harassment, unlawful psychological exam, failure to prevent discrimination and
19  harassment, retaliation, wrongful termination, failure to produce employment records, and
20  intentional infliction of emotional distress.  (ECF No. 17, Am. Compl.)  ADP's answer to
21  the amended complaint includes counterclaims for unlawful recording of communications
22  in violation of both California and federal law.  (ECF No. 21.)  Rutledge now moves to
23  strike and dismiss the counterclaims.  (ECF No. 23.)

24  **II.    <u>SPECIAL MOTION TO STRIKE</u>**

25  Rutledge moves to strike ADP's counterclaims under California's anti-SLAPP
26  ("Strategic Lawsuit Against Public Participation") statute which protects a defendant's
27  right of petition and free speech. Cal. Civ. Proc. Code § 425.16.  "Motions to strike a state
28  law claim under California's anti-SLAPP statute may be brought in federal court," *Vess v.*

*Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1109 (9th Cir. 2003), but the anti-SLAPP statute does not apply to claims brought under federal law, *Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010).  It follows that Rutledge's motion to strike ADP's second cause of action based on violations of federal law is granted and the Court only considers Rutledge's motion to strike ADP's first cause of action.

"The analysis of an anti-SLAPP motion proceeds in two steps." *Barry v. State Bar of California*, 386 P.3d 788, 790 (Cal. 2017).  "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity." *Id.* (quotation omitted).  "If the court finds such a showing has been made, it then must consider whether the plaintiff has demonstrated a probability of prevailing on the claim." *Id.* (quotation omitted).

To satisfy step one, Rutledge must show that the activity underlying ADP's cause of action falls under one of four enumerated categories of activity protected by the statute. *Equilon Enters. v. Consumer Cause, Inc.*, 52 P.3d 685, 693 (Cal. 2002).  The first three categories protect "written or oral statement[s]."  Cal. Civ. Proc. Code § 425.16(e)(1)–(3). The fourth category covers "other conduct" but the conduct must be "in connection with a public issue or an issue of public interest." *Id.* § 425.16(e)(4); *see also Old Republic Constr. Program Grp. v. The Boccardo L. Firm, Inc.*, 179 Cal. Rptr. 3d 129, 140 (Ct. App. 2014) ("Only one of the four categories of protected activity covers noncommunicative conduct . . . and that type of protected activity must have taken place in connection with a public issue or an issue of public interest." (quotations omitted)).

Rutledge's act of recording the meetings is the activity underlying ADP's counterclaims.  *See Mindys Cosms., Inc. v. Dakar*, 611 F.3d 590, 597 (9th Cir. 2010) ("[T]he critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity." (quoting *Navellier v. Sletten*, 52 P.3d 703, 709 (Cal. 2002)); *see also Lieberman v. KCOP Television, Inc.*, 1 Cal. Rptr. 3d 536, 541 (Ct. App. 2003) ("A section 632 violation is committed the moment a confidential communication is secretly recorded regardless of whether it is subsequently disclosed.").

As recording a conversation does not involve making an oral or written statement, the recording must have been made in connection with a public issue or an issue of public interest to qualify as a protected activity.

Assuming *arguendo* that Rutledge's recording furthered his right of petition as he claims, (ECF No. 23-1, at 15–16), the Court finds that the recordings do not relate to a matter of public interest are therefore not protected activity. The California Supreme Court has identified three nonexclusive categories of conduct that meet the public interest requirement: (1) conduct that "concerns a person or entity in the public eye"; (2) "conduct that could directly affect a large number of people beyond the direct participants"; and (3) conduct that "involves a topic of widespread, public interest." *Rand Res., LLC v. City of Carson*, 433 P.3d 899, 911 (2019) (quotations omitted).

Rutledge argues that the August 23 recording concerns a matter of public interest because the meeting was sparked by concern arising from statements Rutledge made about the COVID-19 vaccine. (ECF No. 29, at 6–7.) Specifically, Rutledge states that he openly opposed ADP's vaccine-or-test mandate and was subjected to a "wellness check"—the August 23 meeting—as a result of his opposition. (*Id.* at 7.) Rutledge concludes that the recording should therefore be protected under the statute because "[i]ssues regarding COVID-19 are undoubtedly matters of public interest." (*Id.* at 7–8.)

This argument is unavailing. There is no evidence that the COVID-19 vaccine or related matters were discussed in the August 23 meeting. In fact, Rutledge admits that "ADP never shared with Rutledge . . . the true reason behind the August 23 meeting," and that "ADP kept Rutledge in the dark as to why it conducted the wellness check." (ECF No. 29, at 7–8.) The recordings contain discussions concerning Rutledge's personal life, his wellbeing. and his ability to perform his job. (*See* ECF No. 17, at 4–6.) Nothing said in the recording concerns a large amount of people, nor is Rutledge's wellbeing a subject of widespread, public interest. Moreover, the recorded individuals are not in the public eye and the fact that the participants worked for a company that employs a large number of employees does not transform the recorded meetings into one that directly affects a large

number of people. *See Rivero v. Am. Fed'n of State, Cnty., & Mun. Emps.*, 130 Cal. Rptr. 2d 81, 90–91 (Ct. App. 2003) ("[I]nformation that can be used as an example or as a motivator is not the same as information that has intrinsic value to others."). Rutledge has not met his threshold burden of showing ADP's counterclaims are based on protected activity. The Court therefore need not consider whether ADP has demonstrated a reasonable probability of success on its counterclaims for purposes of the Anti-SLAPP motion. *Santa Monica Rent Control Bd. v. Pearl St.*, 135 Cal. Rptr. 2d 903, 910 (Ct. App. 2003). Even so, the Court addresses Rutledge's argument that the litigation privilege prevents ADP from demonstrating a probability of success, (ECF No. 23-1, at 20–22), because "the litigation privilege is an entirely different type of statute than section 425.16," *Jarrow Formulas, Inc. v. LaMarche*, 74 P.3d 737, 743 (Cal. 2003).

Under the litigation privilege, "communications with 'some relation' to judicial proceedings [are] absolutely immune from tort liability." *Rubin v. Green*, 847 P.2d 1044, 1047 (Cal. 1993) (en banc). The litigation privilege "is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards." *Rusheen v. Cohen*, 128 P.3d 713, 718 (Cal. 2006). But the litigation privilege does not bar lawsuits based on *noncommunicative* conduct even if the conduct bears some relation to judicial proceedings. *Kimmel v. Goland*, 793 P.2d 524, 529–30 (Cal. 1990). "The distinction between communicative and noncommunicative conduct hinges on the gravamen of the action." *Rusheen*, 128 P.3d at 719.

Rutledge argues that ADP's counterclaims are based on communicative conduct because "[a]n essential part of ADP's counterclaims is that Rutledge obtained and communicated the alleged recordings to ADP, via his counsel, in confidential settlement discussions to 'strongarm' a settlement." (ECF No. 23-1, at 21.) But the counterclaims are not for extortion. Nor do the counterclaims arise from Rutledge's communications to his attorneys. As previously stated, ADP's counterclaims are based on Rutledge's acts of recording the meetings which is noncommunicative conduct. *See Kimmel*, 793 P.2d 524 at 530 ("In sum, we hold that park management's cross-complaint for damages for

violation of Penal Code section 632 is not barred by the litigation privilege."). Thus the litigation privilege does not prevent ADP from bringing its counterclaims.

### III. ATTORNEYS' FEES AND COSTS

Rutledge requests attorneys' fees and costs incurred in moving to strike ADP's pleading under the Anti-SLAPP law. (ECF No. 23-1, at 24–25); *see* Cal. Civ. Proc. Code § 425.16(c)(1) ("[A] prevailing defendant on a special motion to strike shall be entitled to recover that defendant's attorney's fees and costs."). Having denied Rutledge's special motion to strike, his request for attorneys' fees and costs is consequently denied.

### IV. MOTION TO DISMISS

A 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain, in part, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). But plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 12(b)(6). The plausibility standard demands more than "a formulaic recitation of the elements of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). Instead, the complaint "must contain allegations of underlying facts sufficient to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a 12(b)(6) motion to dismiss, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). However, a court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *See Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

### A.    First Cause of Action—Unlawful Recording of Communications in Violation of California Penal Code § 632.7

Section 632 of the California Penal Code[1] provides, in relevant part, "[a] person who, intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication" violates the statute.  Cal. Penal Code § 632(a).  "Accordingly, the three elements that [ADP] must prove are (1) an electronic recording of (or eavesdropping on); (2) a 'confidential' communication; and (3) all parties did not consent."  *Weiner v. ARS Nat. Servs., Inc.*, 887 F. Supp. 2d 1029, 1032 (S.D. Cal. 2012) (citing *Flanagan v. Flanagan*, 41 P.3d 575, 580–81 (Cal. 2002)).  Section 637.2 of the California Penal Code authorizes a private civil right of action for any violation of section 632.  ADP adequately pleads that Rutledge recorded the meetings with his cellphone, an electronic device, and that ADP did not consent to such recording.  (ECF No. 21, at 24–25.)  The only question then is whether ADP has plausibly shown that the meetings constitute "confidential communications" under the statute.

"[A] conversation is confidential under section 632 if a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard or recorded."  *Flanagan*, 41 P.3d at 582.  Rutledge argues that there was no reasonable expectation that the August 23 meeting was confidential because Rutledge did not know the other two people on the call and he did not want to answer questions without first being told the purpose of the meeting.  (ECF No. 23-1, at 19.)  Rutledge adds that Paulhus and Everett participated in the meeting from Georgia which has a one-party

---

[1] Although ADP's first cause of action is labeled as a violation of California Penal Code § 632.7, "[a] complaint need not identify the statutory or constitutional source of the claim raised in order to survive a motion to dismiss."  *Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir. 2008).  ADP's counterclaims survive as long as ADP alleges facts sufficient to support a cognizable legal theory.  *See Navarro*, 250 F.3d at 732.

consent law, making it unreasonable for the ADP employees to objectively believe that communication with an unwilling participant is confidential. (*Id.*)

The Court finds that ADP has sufficiently pled the existence of a reasonable expectation of confidentiality. ADP alleges that Rutledge did not inform the other meeting participants that he was recording the call and therefore ADP had a reasonable expectation that the meeting would not be recorded. (ECF No. 21, at 25.) Moreover, according to Plaintiff's amended complaint, in response to Rutledge's request that his managers be present for the call Paulhus snapped at Rutledge that "the call will remain confidential." (ECF No. 17, at 5.) The absence of a warning, considered alongside Paulhus's statement and the personal nature of the call, indicates that ADP had a reasonable expectation of confidentiality. Thus, ADP has adequately pled a claim for violation of California Penal Code § 632. The Court need not address whether the recording of the August 24 meeting supports a claim for violation of section 632. *See* Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically . . . in a single count . . . . If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.").

Rutledge seeks to dismiss ADP's counterclaims on the grounds that any information ADP has regarding the alleged recordings was obtained through confidential settlement discussions which is inadmissible evidence. (ECF No. 23-1, at 22–23.) The Court declines to dismiss ADP's counterclaims on these grounds as the Court need not address the admissibility of evidence at the pleading stage.

    **B.**    **Second Cause of Action—Unlawful Recording of Communications in Violation of Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510–2523**

18 U.S.C. § 2511(1)(a) prohibits the intentional interception of electronic communications and § 2520(a) allows for a civil action to enforce the statute. But § 2511 provides an exception:

> It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication . . . unless such communication is intercepted for the purpose of committing any criminal or tortious act.

§ 2511(2)(d). Thus, Rutledge can only be held liable if he recorded the conversation "for the purpose of committing any criminal or tortious act." *Id.*

ADP alleged in its counterclaim that Rutledge "*disclosed* the contents of his illegal recordings . . . for purposes of intentionally using the contents of the recordings in an attempt to strongarm ADP into settling Rutledge's baseless lawsuit." (ECF No. 21, at 27.) Nowhere does ADP allege that Rutledge possessed an intent to commit a tortious or criminal act *at the time he recorded the meeting*. ADP has thus failed to allege that Rutledge had the requisite intent required to maintain a claim against him for unlawful interception. *See Sussman v. American Broadcasting Cos.*, 186 F.3d 1200, 1202 (9th Cir. 1999) ("[T]he focus . . . is upon whether the purpose for the interception—its intended use—was criminal or tortious.").

18 U.S.C. § 2511 also makes it illegal to "intentionally disclose[] . . . to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection." § 2511(1)(c). ADP claims that Rutledge "knew that his act of audio-recording the Zoom conversation was unlawful . . . under both California and federal law." (ECF No. 21, at 23.) But a valid claim under § 2511(1)(c) is contingent on the original interception being unlawful. *Noel v. Hall*, 568 F.3d 743, 751 (9th Cir. 2009). Thus ADP has not stated a claim for illegal disclosure because it has not stated a claim for illegal interception. Rutledge's motion to dismiss ADP's second counterclaim is granted with leave to amend. *See Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) ("Leave to amend should be granted unless the district court determines that the pleading could not possibly be cured by the allegation of other facts." (quotation omitted)).

## V. CONCLUSION

For the foregoing reasons, Rutledge's special motion to strike and request for attorneys' fees and costs are **DENIED**. Rutledge's motion to dismiss is **DENIED** as to ADP's first cause of action and **GRANTED with leave to amend** as to ADP's second cause of action. ADP shall file an amended counter-complaint, if any, no later than **June 30, 2023**.

**IT IS SO ORDERED.**

Dated: June 16, 2023

_____
Hon. M. James Lorenz
United States District Judge